IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| J & L MANAGEMENT CORP. OF OHIO )<br>Plaintiff, )<br>)<br>)<br>ARCELORMITTAL WIERTON, INC. )<br>and ARCELORMITTAL U.S.A., INC. )<br>Defendants. )<br>) | Judge Blanche M. Manning<br>Case No. 08 C 4749 |

## MEMORANDUM AND ORDER

The plaintiff has filed suit against the defendants alleging various state law causes of action based on a business deal gone bad. Defendants move to transfer this action pursuant to 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A decision to transfer an action is committed to the district court's sound discretion. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

**Background**

"When deciding a motion to transfer venue, the court must accept as true all of plaintiff's well-pleaded facts in the complaint, unless they are contradicted by affidavits or other appropriate evidence from the defendant." *Andrade v. Chase Home Finance*, LLC, No. 04 C 8229, 2005 WL 3436400, at *2 (N.D. Ill. Dec. 12, 2005)(citation omitted). The court in footnote number 1 below has noted the defendants' disagreement with certain allegations.

The relevant facts, taken from the well-pled complaint, are as follows. Plaintiff J&L Management Corporation of Ohio ("JLM) is a corporation organized under the laws of Ohio, with its principal place of business in Mt. Clemens, Michigan. JLM is a demolition contractor.

Defendant ArcelorMittal Weirton, Inc. ("ArcelorMittal Weirton") is a corporation organized under the laws of Delaware, with its principal place of business in Weirton, West Virginia. ArcelorMittal Weirton is a steel company. Likewise, defendant ArcelorMittal U.S.A., Inc. ("ArcelorMittal U.S.A.") is a corporation organized under the laws of Delaware, but with its principal place of business in Chicago, Illinois. ArcelorMittal U.S.A. is also a steel company.

In or about the early fall of 2007 until in or about December 2007, JLM was one of the bidders for a job to demolish the majority of the ArcelorMittal Weirton Complex in Weirton, West Virginia. At some time before the bidding process had concluded, ArcelorMittal Weirton decided not to go forward with the demolition. In early 2008, ArcelorMittal Weirton's procurement specialist John Mihalyo encouraged JLM to bid on another job, the demolition of the ArcelorMittal Weirton's coal handling system in Weirton, West Virginia ("the Project"). JLM alleges that Mihalyo was, at all times relevant to this action, ArcelorMittal Weirton's agent for the purposes of hiring a demolition company for the Project, with the actual or, in the alternative, apparent authority to bind ArcelorMittal Weirton to retaining a demolition contractor with respect to the same. JLM bid on the Project in early 2008.

On several occasions in April, 2008 Mihalyo orally advised JLM management that ArcelorMittal Weirton had accepted JLM's bid, contingent on JLM delivering certain technical documents and plans to ArcelorMittal Weirton. Shortly thereafter, JLM provided said technical documents and plans to ArcelorMittal Weirton. Mihalyo confirmed in writing that JLM had won the job in an email string dated April 24, 2008, in which Mihalyo wrote that "Weirton will be issuing a PO to J&L for the demolition work to be performed." JLM maintained personnel onsite at the Project. In reliance upon being awarded the contract for the Project, JLM forewent other work and

did not bid on other projects that would conflict with the manpower and equipment it was required to commit to the Project.

On May 2, 2008, subsequent to accepting the bid, ArcelorMittal Weirton filed an asbestos abatement notification ("NESHAP") with West Virginia environmental authorities. The NESHAP identifies JLM as a contractor and was signed by an agent of ArcelorMittal Weirton. On information and belief, during this time frame, Arcelormittal U.S.A. decided that it wanted another demolition contractor to undertake the Project.[1] On information and belief, Arcelormittal U.S.A. informed Arcelormittal Weirton that it was to withdraw the contract from JLM. On May 8, 2008, ArcelorMittal Weirton requested that JLM change the scope of work to allow ArcelorMittal Weirton to retain scrap metal from the coal handling job. Mihalyo assured JLM that the change was for accounting purposes only, and that it would not affect the award of the coal handling project to JLM. JLM agreed to reformat the bid, but only on the condition that doing so would not affect its role as the project contractor. Again, Mihalyo assured JLM tha

t this was a "mere formality" and that the coal handling job belonged to JLM.

---

[1] In support of their motion to transfer, the defendants have filed the affidavit of Om Mandhana, the Vice President of Procurement for ArcelorMittal Wierton and the Vice President for Procurement and Supply for ArcelorMittal U.S.A. In the affidavit, Mandhara attests that he is based in East Chicago, Illinois, and was personally involved in the procurement process for the demolition of a coal handling facility at ArcelorMittal Wierton's facility in Wierton, West Virginia (i.e., the Project). Affidavit of Om Mandhara, Exh. A to Defendant's Motion to Transfer, at ¶¶ 2 and 7. The affidavit lays out how, according to Mandhara, the bidding process occurred with respect to the Project including his recommendation that changes be made to the manner in which the bid was being structured. As a result of these changes, "AM Wierton asked all of the bidders to modify their proposals." *Id*. at ¶ 13. Mandhara's affidavit concludes with the statements that "[a]t no time in the process was anyone from AM Wierton based in Illinois working on this particular project," and that "throughout the process, each of the individuals involved in the decision was acting in their capacities as employees or officers of AM Wierton." *Id*. at ¶¶ 16-17.

In reliance on this representation, JLM refrained from bidding on other jobs that would have conflicted with the need for manpower and equipment at the Project.

On May 15, 2008, JLM emailed Mihalyo, asking for an update on the "revised coal handling system information." Mihalyo replied in a subsequent e-mail, stating that "the approved contractor will be notified as well as those not being awarded the job." On June 10, 2008, Mihalyo advised JLM that JLM was "not the low bidder on the revised bid scope," and would therefore not be awarded the Project.

JLM then brought the instant suit based on diversity jurisdiction alleging the following claims: (1) Count I--breach of contract; (2) Count II–intentional interference with contract; (3) Count III–intentional interference with business expectancy; (4) Count IV–promissory estoppel, in the alternative to Count I. As noted above, the defendants now move to transfer the case to the Northern District of West Virginia pursuant to 28 U.S.C. § 1404(a).

**Analysis**

Under § 1404(a), the party seeking transfer must demonstrate that (1) venue is proper in the transferor court; (2) venue would be proper in the transferee court; and (3) transfer will serve the convenience of the parties and witnesses and promote the interests of justice. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). In evaluating the third prong-the convenience and fairness of the proposed transfer-the court considers relevant private and public interests. In addition, "the movant has the burden of establishing by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey*, 796 F.2d at 219-20 (citations omitted).

The parties agree that the first two prongs of the § 1404(a) analysis are satisfied, that is, that venue is proper in this district as well as the proposed transferee district. Thus, the court will focus

on the third prong: whether transfer will serve the convenience of the parties and witnesses and promote the interests of justice.

1. <u>Private Interest Factors-Convenience of the Parties and Witnesses</u>

When evaluating the private interest factors, the court considers (1) the plaintiffs' choice of forum; (2) the situs of material events; (3) the availability of evidence in each forum; (4) the convenience of the witnesses; and (5) the convenience of the parties litigating in the respective forums. *Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 902 (N.D. Ill. 2001). The court also considers whether the parties have met their burden of specifically identifying the witnesses they intend to call, as well as the general content of the witnesses' proposed testimony. *Mattsson By and Through Mattsson v. Gerry Wood Products Co.*, No. 95 C 2314, 1997 WL 158334, at *1 (N.D. Ill. Mar. 31, 1997)(citations omitted).

a. *Plaintiffs' Choice of Forum*

Here, plaintiffs filed suit in Illinois. Standing alone, this fact militates against transfer. However, "where the plaintiff's choice of forum has a relatively weak connection with the operative facts giving rise to the claim or is not the plaintiff's home forum, the deference traditionally given to the selection is lessened." *Brady v. Hanger Orthopedic Group, Inc.*, No. 05 C 0492, 2006 WL 2560953, at *2 (N.D. Ill. Aug. 30, 2006)(*citing Von Holdt v. Husky Injection Molding Sys., Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995)). *See also Commercial Union Ins. Co. v. Auto Europe, L.L.C.*, No. 01 C 6961, 2002 WL 47026, at *2 (N.D. Ill. Jan. 10, 2002) ("[T]he weight granted to the plaintiff's choice of forum is significantly diminished when the events giving rise to the cause of action took place outside the plaintiff's choice of forum.") (citation omitted). Further, in the face of a weak relationship between the operative facts and the plaintiffs' chosen forum, the plaintiffs'

choice of forum becomes "only one of the many factors the court considers." *D'Ancona & Pflaum LLC v. M2 Software, Inc.*, No. 00 C 7150, 2001 WL 873021, at *2 (N.D. Ill. Aug. 2, 2001)(citation omitted).

Here, the connection with Illinois is weak. The plaintiff, JLM, is an Ohio corporation with a principal place of business in Michigan. Therefore, the plaintiff is not in its home forum. In addition, as discussed below, there is little to no nexus between this district and the operative facts giving rise to the cause of action. Further, plaintiffs have not demonstrated that the events giving rise to the claims have a strong connection to the Northern District of Illinois. Accordingly, the court will give minimal weight to plaintiff's choice of forum.

  b.  *Situs of Material Events*

The court's review of the amended complaint indicates that there are no material events or documents allegedly located in Illinois. The relevant negotiations and communications related to the demolition of a facility in West Virginia. The allegations in the amended complaint refer primarily to communications made between JLM in Michigan and Mihalyo of ArcelorMittal Wierton. The amended complaint does not identify the location of Mihalyo, but Mandhana's affidavit states that Mihalyo is based in Wierton, West Virginia. Mandhana Affidavit at ¶ 14. Indeed, the only actual location specifically identified in the amended complaint is West Virginia. And in the plaintiff's response to the motion to transfer, it states that "JLM bid on the job in early 2008 and was working out the details of the job via emails between Michigan, Florida, and West Virginia." Plaintiff's Response at 2. Apparently, one of the partners in JLM was located in Florida.

The only events that are even possibly related to Illinois are J&L's allegations that ArcelorMittal U.S.A., located in Illinois, "decided that it wanted another demolition contractor to

undertake the Project" and so "informed ArcelorMittal Wierton that it was to withdraw the contract from JLM." Amended Comp. at ¶ 11. These allegations, however, are made on information and belief and are contradicted by Mandhana's affidavit, which states that no one at ArcelorMittal U.S.A. in Illinois was involved in "working on this particular project." Mandhana Affidavit at ¶ 16. The affidavit submitted by JLM of its president, Philip J. Kennedy, does not properly rebut Mandhana's statement that no one in Illinois was working on the project. Kennedy states that "[w]hen I questioned the need to make changes to the scope of work, both Mihalyo and Byers [who is also based in Wierton West Virginia, according to Mandhana] independently advised me, in words to this effect but not an exact quote, 'It's coming from Chicago. We have no control.'" Phillip Kennedy Affidavit, attached as Exhibit 2 to Plaintiff's Response, at ¶ 15. But Chicago does not necessarily mean ArcelorMittal U.S.A. Under the circumstances, the comments could just as easily likely have been referring to Mandhana's location in East Chicago, Indiana.

To the extent that the plaintiff seeks to rely only on the fact the ArcelorMittal U.S.A.'s principal place of business is in Chicago, Illinois, "the mere fact that a business is headquartered in the plaintiff's chosen forum is insufficient to resist a transfer motion when the balance of factors weighs in favor of the transfer." *Andrade*, No. 04 C 8229, 2005 WL 3436400, at *5 (citations omitted). Moreover, even if the material facts were tenuously related to Chicago, this case has far stronger ties to West Virginia. Thus, from the facts presented, the situs of material events does not favor proceeding with the litigation in this forum.

    c.    *Availability of Evidence*

Both parties agree that any relevant documents, which the plaintiff refers to as "relatively few in number," are located in multiple locations (including Illinois, Ohio, Michigan, Indiana, Florida

and West Virginia) and can be easily transferred. Thus, the location of relevant sources of proof does not favor either location. *See Coolsavings.com, Inc. v. IQ Commerce Corp.*, 53 F. Supp. 2d 1000, 1006 (N.D. Ill. 1999).

  d. *Convenience of the Witnesses*

To satisfy this factor, the movant must specify the key witnesses to be called and make a general statement of the nature of their testimony. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167-68 (N.D. Ill. 1995)(citation omitted). In considering this factor, "a court should look to the nature and quality of the witnesses' testimony with respect to the issues of the case," rather than being swayed by the length of a party's witness list. *See id.*

According to the defendants, a "majority" of the witnesses reside in West Virginia. However, the defendants fail to specifically identify any witnesses other than Mandhana or discuss the substance of any likely testimony. The plaintiff argues that because the defendants have failed to properly discuss the witnesses and their testimony, the court should conclude that this factor neither weighs in favor of or against transfer. While this generally might be true, the court notes that neither party in any of the papers filed has named even one possible witness from Illinois. Thus, while the convenience of the witnesses may be neutral with respect to transfer to West Virginia, the lack of any witnesses in Illinois militates in favor of transfer from this jurisdiction.

  e. *Convenience of the Parties*

In assessing the convenience of the parties, the court may consider the parties' respective residences and their abilities to bear the expense of litigating in a particular forum. *Clearclad Coatings, Inc. v. Xontal, Ltd.*, No. 98 C 7199, 1999 WL 652030 at \*11 (N.D. Ill. Aug. 20, 1999)(citation omitted). Regardless of whether the case is tried in the Northern District of Illinois

or the Northern District of West Virginia, the plaintiff will have to travel from Michigan for any court hearings or trial. However, ArcelorMittal Wierton is located in West Virginia, so the Northern District of West Virginia would obviously be more convenient for it. ArcelorMittal U.S.A. has its principal place of business in Chicago, though, again, the parties have not identified any witnesses or documents from ArcelorMittal U.S.A., so the relevance of its location is limited. Thus, because West Virginia is ArcelorMittal Wierton's home turf while llinois is not a home turf for Michigan-based JLM, this factor strongly favors transfer to the Northern District of West Virginia.

2.  Public Interest Factors-Interests of Justice

With respect to the interest of justice inquiry, the court generally focuses on judicial economy rather than the litigants' or witnesses' private interests. *Koos, Inc. v. Performance Indus., Inc.*, 747 F. Supp. 487, 491 (N.D. Ill. 1990)(citations omitted). Relevant considerations include the forum's relationship to the cause of action, the court's familiarity with the applicable law and the speed at which a case will proceed to trial. *Dunn v. Soo Line R.R. Co.*, 864 F. Supp. 64, 66 (N.D. Ill. 1994). Further, even where the private interest factors-the convenience of the parties and witnesses-may support a different outcome, the interests of justice may be determinative in particular cases. *Coffey*, 796 F.2d at 220 (citations omitted). Here, for the reasons discussed below, the interests of justice support a transfer.

a.  *Relationship to Cause of Action and Familiarity with Law*

As discussed above, this district has a weak if not non-existent relationship to this case. As to familiarity with the law, "[i]n a suit, like this one, where subject matter jurisdiction is based on diversity, the forum state's choice of law rules determine the applicable substantive law." *Rockwell Automation, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, --- F.3d ----, 2008 WL 4182586,

at * (7th Cir. Sept. 12, 2008)(citation omitted). The parties assert that there is no way to determine which states law will apply and therefore, which court will have a greater familiarity with the law. However, if the case were pending in this district, under Illinois choice of law principles:

> The Restatement provides that when the parties have not made an effective choice of law, the factors of possible relevance to choice of law in breach of contract cases are:
>
> "(a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties,"
> which are to be "evaluated according to their relative importance with respect to the particular issue."

*Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005)(citation omitted). Based on the facts presented thus far, under none of these factors would the breach of contract claim be decided pursuant to Illinois law. The place of performance and the location of the subject matter of the contract would have been in West Virginia. Based on the allegations in the amended complaint and the affidavit of the plaintiff's president, Phillip Kennedy, the plaintiff dealt primarily with individuals located in West Virginia, including Mihalyo, Byers, and Richard McCullough; thus, the place of negotiation points to West Virginia. And, again, the relevant defendant, ArcelorMittal Wierton, is located in West Virginia while JLM is located in Michigan. The factors relevant to the breach of contract claim point to application of West Virginia law.

As to the tort claims, "under Illinois choice-of-law rules, the law of the place of injury controls unless another state has a more significant relationship with the occurrence and with the parties with respect to the particular issue." *Townsend v. Sears, Roebuck and Co.*, 879 N.E.2d 893,

903 (Ill. 2007)(citation and internal quotation marks omitted). While this is a more complex analysis, again, under no facts as the court currently understands them would Illinois' choice of law rules result in the application of Illinois law to the tort claims. The place of injury would likely be Michigan, which is the plaintiff's principal place of business. It does not appear that if the case were to proceed in this district that this court would be applying Illinois law to either the breach of contract or tort claims.

If the case were pending in West Virginia, as the defendants urge, under West Virginia choice of law principles the substantive law of the state having "the most significant relationship" to the transaction at issue is applied to breach of contract claims, as well as tort claims arising from contractual relationships. *See Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 390 S.E.2d 562, 567 (W.V. 1990) (applying "more significant relationship" test to insurance policy executed in one state and performed in another); *Lee v. Saliga*, 373 S.E.2d 345, 353 (W.V. 1988) (applying "more significant relationship" test to motor vehicle insurance policy); *Oakes v. Oxygen Therapy Servs.*, 363 S.E.2d 130, 131 (W.V. 1987) ("most significant relationship" test applies when there is a complex relationship between plaintiff's tort claim and a contract). As in Illinois, the court concludes that a West Virginia court would not find that Illinois is the place with the most significant relationship to the transaction at issue. Instead, the facility to be demolished issue is located in West Virginia and the plaintiff negotiated the contract with individuals located in West Virginia and the relevant defendant is located in West Virginia.

The court concludes that the relationship to the cause of action and familiarity to the law both favor transfer out of this district and to West Virginia.

    b.    *Speed at Which the Case will Proceed to Trial*

The speed at which this case would proceed in Illinois or West Virginia is neutral. The two most relevant statistics for the purposes of transfer are: (1) the median months from filing to disposition; and (2) the median months from filing to trial. *Brandon Apparel Group v. Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999)(citation omitted).

The Federal Court Management Statistics Report for the annual period ending September 30, 2007 indicates that the median time from filing to disposition of civil cases is 6.2 months in the Northern District of Illinois and 12.1 months in the Northern District of West Virginia. *See* Administrative Office of the United States Courts, 2007 Federal Court Management Statistics, attached as Exh. 5 to Plaintiff's Response. In addition, the median time from filing to trial of civil cases is 29.7 months in the Northern District of Illinois while the last reported statistic for the Northern District of West Virginia in 2002 was 15.5 months. *See id.* Thus, based on the statistics currently available, the time to disposition is faster in the Northern District of Illinois while the time to trial is faster in West Virginia.[2]

Given these differences, it does not appear that the relative speed of the fora weighs in favor of either forum. Nevertheless, "common sense suggests that the litigation will move more quickly in a venue close to key witnesses and evidence, and where such witnesses are within the court's subpoena power." *Andrade*, 04 C 8229, 2005 WL 3436400, at *9. Thus, to the extent that the Northern District of West Virginia has at least some relationship the cause of action, the court

---

[2]The plaintiff contends that the court should not use the outdated 2002 figure from the Northern District of West Virginia as comparison with the 2007 figure from the Northern District of Illinois. But that is the only information available to the court and is better than completely disregarding this basis of comparison. Even using the 2002 number for the Northern District of Illinois, which was 26.0 months from filing to trial, the conclusion is essentially the same–cases proceed from filing to trial faster in West Virginia.

concludes that this factor weighs slightly in favor of transfer.

**Conclusion**

In summary, after carefully weighing the private and public interests, the court in its discretion concludes that the defendants have demonstrated that transferring this action out of the Northern District of Illinois, which has little to no connection to this case, is in the interests of justice. The defendants ask for transfer to the Northern District of West Virginia, which is more convenient to defendant ArcelorMittal Wierton, is the location of the subject matter of the contract, and the location of several witnesses (and likely documents) involved in the negotiations at issue. While the plaintiff opposes transfer to the Northern District of West Virginia, the proper venue is most certainly not this district and the plaintiff does not argue that another venue is more appropriate than the Northern District of West Virginia. Accordingly, the defendants' motion to transfer this action to the Northern District of West Virginia [19-1] is granted.

**ENTER:** _____
**Blanche M. Manning**
**United States District Judge**

**DATE:** November 25, 2008